UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHILDREN'S MEDICAL CENTER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CELGENE CORPORATION,<br><br>Defendant. | Civil Action No. 13-11573-MLW |

## CELGENE CORPORATION'S ANSWER AND COUNTERCLAIM

Defendant Celgene Corporation ("Celgene") hereby answers the Complaint filed by Plaintiff Children's Medical Center Corporation ("CMCC") as follows:

## JURISDICTION AND VENUE

1. Celgene is without information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint.

2. Celgene admits the allegations of Paragraph 2 of the Complaint.

3. Celgene denies the allegations of Paragraph 3 of the Complaint, except it admits that Celgene is registered to do business in the Commonwealth of Massachusetts. Celgene further admits that, for purposes of this action only, Celgene is subject to personal jurisdiction in this judicial District.

4. Paragraph 4 of the Complaint alleges legal conclusions, to which no response is required. Celgene further states that it does not intend to challenge venue in this Court.

## FACTUAL ASSERTIONS

5. Celgene admits the allegations of Paragraph 5 of the Complaint.

6. Celgene denies the allegations of Paragraph 6 of the Complaint, except it admits that the Exclusive License Agreement provided, *inter alia*, that CMCC would grant Celgene an exclusive license to certain patents and patent applications defined in the Agreement as the "Analog Patents." Celgene further admits that in consideration for the license to the Analog Patents, Celgene agreed to make certain specified payments defined in the Exclusive License Agreement, including certain running royalties for a specified term.

7. Celgene denies the allegations of Paragraph 7 of the Complaint, except it admits that in consideration for the rights and license with respect to "Amino Thalidomide," Celgene agreed to pay CMCC a 2.5% running royalty on the "Net Sales Revenue" received by Celgene for sales of an "Amino Thalidomide Product," as defined by the Exclusive License Agreement, for a specified term.

8. Celgene denies the allegations of Paragraph 8 of the Complaint, except it admits that pursuant to the Exclusive License Agreement, Celgene was obligated to pay royalties on an Amino Thalidomide Product until March 1, 2013. Celgene further states that, because no Analog Patent was extended under 35 U.S.C. § 156 for an Amino Thalidomide Product, Celgene's royalty obligations with regard to Amino Thalidomide expired as of March 1, 2013. *See* Exclusive License Agreement at ¶¶ 4.3.1, 6.1.

9. Celgene denies the allegations of Paragraph 9 of the Complaint, except it admits that in consideration for the rights and license with respect to "Revimid," Celgene agreed to pay CMCC a 1% running royalty on the Net Sales Revenue received by Celgene for sales of a "Revimid Product," as defined by the Exclusive License Agreement, for a specified term.

10. Celgene denies the allegations of Paragraph 10 of the Complaint, except it admits that pursuant to the Exclusive License Agreement, Celgene was obligated to pay royalties on a "Revimid Product" until March 1, 2013. Celgene further states that, because no Analog Patent was extended under 35 U.S.C. § 156 for a "Revimid Product," Celgene's royalty obligations with regard to Revimid expired as of March 1, 2013. *See* Exclusive License Agreement at ¶¶ 4.3.2, 6.1.

11. Celgene expressly denies that any of the U.S. "Analog Patents" that were the subject of the Exclusive License Agreement was extended under 35 U.S.C. § 156 for a "Revimid Product." Furthermore, Celgene denies the allegations of Paragraph 11 of the Complaint, except that it admits that on or about March 26, 2008, Celgene obtained a patent term extension of Celgene's own U.S. Patent No. 5,635,517 for the period of 1,167 days from July 24, 2016 for the product REVLIMID® (lenalidomide). Celgene states that U.S. Patent No. 5,635,517 is owned by Celgene Corporation and has been owned by Celgene Corporation at all relevant times. Celgene denies that CMCC has had any ownership interest in U.S. Patent No. 5,635,517 at any time. Celgene also denies that U.S. Patent No. 5,635,517 was an "Analog Patent" subject to the Exclusive License Agreement. Further, Celgene expressly denies that the patent term extension that Celgene obtained on Celgene's own patent – U.S. Patent No. 5,635,517 – affects the payment or term of any running royalty defined in the Exclusive License Agreement.

12. Celgene denies the allegations of Paragraph 12 of the Complaint, except it admits that it currently sells and offers to sell POMALYST® (pomalidomide). Celgene further admits that POMALYST® is an "Amino Thalidomide Product," as defined by the Exclusive License Agreement. Celgene also admits that it currently sells and offers to sell REVLIMID® (lenalidomide). Celgene further admits that REVLIMID® is a "Revimid Product," as defined by

the Exclusive License Agreement.  Celgene expressly denies that any further royalty payments are due to CMCC for an "Amino Thalidomide Product" or a "Revimid Product" under the Exclusive License Agreement.

13. Celgene admits the allegations of Paragraph 13 of the Complaint.

14. Celgene admits the allegations of Paragraph 14 of the Complaint.

15. Celgene denies the allegations of Paragraph 15 of the Complaint, except it admits that it received a letter from CMCC on or about May 21, 2013 and that said letter speaks for itself.

16. Celgene denies the allegations of Paragraph 16 of the Complaint, except it admits that its May 28, 2013 response stated: "We direct your attention to Article 6 of the Agreement ('this Agreement shall terminate upon expiration of all payment obligations under Article 4'). Celgene's payment obligations under Article 4 of the Agreement expired on March 1, 2013. Accordingly, the Agreement itself terminated as of that date, and Celgene's payment of royalties through February 28, 2013, fully discharged Celgene's duties." Celgene further admits that a copy of Celgene's May 28, 2013 letter is attached to the Complaint as Exhibit 1.

17. Celgene denies the allegations of Paragraph 17 of the Complaint.

18. Celgene denies the allegations of Paragraph 18 of the Complaint.

## CMCC'S COUNT I

[*Breach of Agreement*]

19. Celgene repeats, realleges, and incorporates by reference, its responses to the allegations of Paragraphs 1-18 of the Complaint as if fully set forth herein.

20. Celgene denies the allegations of Paragraph 20 of the Complaint.

21. Celgene denies the allegations of Paragraph 21 of the Complaint.

22. Celgene denies the allegations of Paragraph 22 of the Complaint.

## CMCC'S COUNT II

*[Breach of Implied Covenant of Good Faith and Fair Dealing]*

23. Celgene repeats, realleges, and incorporates by reference, its responses to the allegations of Paragraphs 1-18 of the Complaint as if fully set forth herein.

24. Celgene states that Paragraph 24 of the Complaint sets forth a conclusion of law to which no response is required. To the extent that Paragraph 24 can be construed to assert allegations of fact, Celgene denies those allegations.

25. Celgene denies the allegations of Paragraph 25 of the Complaint.

26. Celgene denies the allegations of Paragraph 26 of the Complaint.

27. Celgene denies the allegations of Paragraph 27 of the Complaint.

## CMCC'S COUNT III

*[Declaratory Judgment]*

28. Celgene repeats, realleges, and incorporates by reference, its responses to the allegations of Paragraphs 1-18 of the Complaint as if fully set forth herein.

29. Celgene denies the allegations of Paragraph 29 of the Complaint, except it admits that an actual controversy exists between CMCC and Celgene relating to whether the Exclusive License Agreement is still in effect and whether royalty payments are owed. In particular, contrary to CMCC's allegations in Paragraph 29 and elsewhere in the Complaint, Celgene states that each and every payment obligation under Article 4 of the Agreement expired on March 1, 2013 and that the Exclusive License Agreement terminated by its own terms as of that date.

## GENERAL DENIAL

30. Celgene denies any and all allegations of the Complaint not specifically admitted hereinabove.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

[*Failure to State a Claim*]

31. The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

[*Patent Misuse*]

32. Celgene repeats, realleges, and incorporates by reference, its responses to the allegations of Paragraphs 1-18 of the Complaint as if fully set forth herein.

33. The Exclusive License Agreement provided, *inter alia*, that CMCC would grant Celgene an exclusive license to certain patents and patent applications defined in the Exclusive License Agreement as the "Analog Patents." The licenses granted under the "Analog Patents" relate to three distinct technologies: (1) Amino Thalidomide, (2) Revimid, (3) Licensed Thalidomide Analogues Other Than Amino Thalidomide or Revimid. *See* Exclusive License Agreement at ¶¶ 1.2, 1.3, 1.4, 1.5, 1.7, 1.8, 1.10, 1.11, 1.20, 2.1.

34. In consideration for the license to the Analog Patents, Celgene agreed to make certain specified payments defined in the Exclusive License Agreement, including certain running royalties for a specified term. Each running royalty provision in the Exclusive License Agreement corresponds to one of the three licensed Analog Patent technologies: (1) Amino Thalidomide, (2) Revimid, and (3) Licensed Thalidomide Analogues Other Than Amino Thalidomide or Revimid. *See* Exclusive License Agreement at ¶¶ 4.3.1, 4.3.2, 4.3.3, 6.1.

35. In particular, in consideration for the rights and license with respect to "Amino Thalidomide," Celgene agreed to pay CMCC a 2.5% running royalty on the Net Sales Revenue received by Celgene for sales of an Amino Thalidomide Product, as defined by the Exclusive License Agreement, for a specified term. Because no Analog Patent was extended under 35 U.S.C. § 156 for an Amino Thalidomide Product as of March 1, 2013, the royalty payment obligation with respect to Amino Thalidomide expired on March 1, 2013.

36. In consideration for the rights and license with respect to "Revimid," Celgene agreed to pay CMCC a 1% running royalty on the Net Sales Revenue received by Celgene for sales of a Revimid Product, as defined by the Exclusive License Agreement, for a specified term. Because no Analog Patent was extended under 35 U.S.C. § 156 for a Revimid Product as of March 1, 2013, the royalty payment obligation with respect to Revimid expired on March 1, 2013. Because all royalty payment obligations under Article 4 expired on March 1, 2013, the Agreement terminated by its own terms as of that date.

37. Celgene understands CMCC to allege that the Exclusive License Agreement requires Celgene to make royalty payments on REVLIMID® past March 1, 2013, for at least 1,167 additional days. The 1,167 days corresponds to the patent term extension Celgene obtained on its own patent, *i.e.*, U.S. Patent No. 5,635,517, which is not part of the licensed patents. Patent No. 5,635,517 is not one of the Analog Patents, was never owned by CMCC, and was owned by Celgene at all relevant times. If the Exclusive License Agreement is interpreted as CMCC suggests, then the royalty provision with regard to "Revimid" will project beyond the expiration date of any relevant U.S. Analog Patent.

38. Celgene further understands CMCC to allege that the Exclusive License Agreement requires Celgene to make royalty payments on POMALYST® past March 1, 2013,

for at least 1,167 additional days. The 1,167 days corresponds to the patent term extension Celgene obtained on U.S. Patent No. 5,635,517 for REVLIMID®. Patent No. 5,635,517 is not one of the Analog Patents, was never owned by CMCC, was owned by Celgene at all relevant times, and was not the subject of a patent term extension application for POMALYST®. Indeed, POMALYST® was not yet approved. If the Exclusive License Agreement is interpreted as CMCC suggests, then the royalty provision with regard to "Amino Thalidomide" will project beyond the expiration date of any relevant U.S. Analog Patent.

39. Accordingly, if the Exclusive License Agreement is interpreted as CMCC suggests, then the royalty provisions with regard to Amino Thalidomide and Revimid are unlawful *per se* and unenforceable as a matter of federal patent law.

## THIRD AFFIRMATIVE DEFENSE

[*Breach of Implied Covenant of Good Faith and Fair Dealing*]

40. Celgene repeats, realleges, and incorporates by reference, its responses to the allegations of Paragraphs 1-18 of the Complaint and its allegations of Paragraphs 32-39 of these Affirmative Defenses, as if fully set forth herein.

41. The Exclusive License Agreement contains an implied covenant of good faith and fair dealing.

42. CMCC has breached this implied covenant by wrongfully and in bad faith depriving Celgene of the fruits of its contract, including without limitation, by seeking to recover royalties beyond which was bargained for and that extend past the expiration date of any relevant U.S. Analog Patent.

43. Celgene has dealt fairly and in good faith with CMCC throughout the course of the Exclusive License Agreement.

8

44. As a result of CMCC's breach of the implied covenant of good faith and fair dealing, CMCC is not entitled to the relief it seeks by way of damages and declaratory relief.

## ADDITIONAL AFFIRMATIVE DEFENSES

45. Celgene reserves the right to assert additional defenses that may become known to it through discovery.

## COUNTERCLAIM

Defendant/Counter-claimant Celgene Corporation asserts the following Counterclaim against Plaintiff/Counter-defendant Children's Medical Center Corporation ("CMCC"):

## PARTIES

46. Defendant/Counter-claimant Celgene Corporation ("Celgene") is a Delaware corporation with a principal place of business in Summit, New Jersey.

47. On information and belief, Plaintiff/Counter-defendant CMCC is a Massachusetts corporation with a principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

48. This Court has subject matter jurisdiction over CMCC's claims in this action pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Celgene is a citizen of Delaware and New Jersey. CMCC is a citizen of Massachusetts. Although Celgene denies all of CMCC's material allegations in the Complaint, the amount in controversy exceeds the $75,000 jurisdictional threshold under 28 U.S.C. § 1332(a), by virtue of the Complaint's allegations. CMCC alleges that Celgene owes CMCC at least $3 million in additional royalty payments past March 1, 2013. Complaint at ¶ 17. Celgene denies that it owes CMCC anything.

49. This Counterclaim arises out of the same transaction or occurrence as is the subject of CMCC's Complaint. This Court has subject matter jurisdiction over this Counterclaim because it constitutes a compulsory counterclaim to CMCC's claims in this action, pursuant to Federal Rule of Civil Procedure 13(a). Furthermore, this Counterclaim arises under the provisions of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 2201-2202 because an actual controversy exists between Celgene and CMCC.

50. This Court has personal jurisdiction over CMCC because it has consented to jurisdiction by initiating this action in Massachusetts state court, after which it was properly removed by Celgene to the United States District Court for the District of Massachusetts.

51. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events that give rise to this Counterclaim occurred in this District.

## COUNT I: DECLARATORY JUDGMENT

52. Celgene repeats, realleges, and incorporates by reference, the allegations of Paragraphs 1-51 of this Counterclaim as if fully set forth herein.

53. As described above, an actual controversy exists between CMCC and Celgene relating to whether the Exclusive License Agreement is still in effect and whether royalty payments are owed. CMCC has alleged that the royalty payment obligations under the Exclusive License Agreement continue in full force and effect, for at least 1,167 days past March 1, 2013. In fact, as described above, each of Celgene's royalty payment obligations under the Exclusive License Agreement expired on March 1, 2013, and therefore the Exclusive License Agreement terminated by its own terms as of that date. This actual controversy can be disposed of by a declaration of rights and obligations. Accordingly, Celgene is entitled to a judgment declaring

that Celgene's royalty payment obligations under the Exclusive License Agreement expired on March 1, 2013, and that the Exclusive License Agreement terminated by its own terms as of that date.

## **PRAYER FOR RELIEF**

WHEREFORE, Celgene Corporation respectfully requests that the Court:

(a) Deny Plaintiff Children's Medical Center Corporation's Request for Relief in Counts I, II, and III of the Complaint;

(b) Dismiss the Complaint of the Plaintiff, Children's Medical Center Corporation, with prejudice;

(c) Enter Judgment declaring that Celgene's royalty payment obligations under the Exclusive License Agreement expired on March 1, 2013, and that the Exclusive License Agreement terminated by its own terms as of that date; and

(d) Grant Celgene such other and further relief as the Court deems just in the circumstances.

Respectfully submitted,

CELGENE CORPORATION,

By its attorneys,

*/s/ Sophie F. Wang*
Robert S. Frank (BBO #177240)
*rfrank@choate.com*
Eric J. Marandett (BBO #561730)
*emarandett@choate.com*
Jessica Gan Lee (BBO #670970)
*jlee@choate.com*
Sophie F. Wang (BBO #679642)
*swang@choate.com*
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000

Date: August 5, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those non-registered participants (if any) on August 5, 2013.

                                          */s/ Sophie F. Wang*
                                          Sophie F. Wang

5832182v1