UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHILDREN'S MEDICAL CENTER          )
CORPORATION and CR REV             )
HOLDINGS LCC,                      )
    Plaintiffs                   )
                      )   C.A. No. 13-11573-MLW
       v.                          )
                      )
CELGENE CORPORATION,               )
    Defendant.                   )

MEMORANDUM AND ORDER

WOLF, D.J.                                      September 30, 2016

This case concerns an Exclusive License Agreement (the "Agreement") under which Celgene Corporation ("Celgene") agreed to pay royalties on certain drug sales to Children's Medical Center Corporation ("CCMC") in return for exclusive rights to a portfolio of CMCC patents. CMCC filed a complaint in Suffolk Superior Court for the Commonwealth of Massachusetts alleging that Celgene had wrongfully ceased to pay royalties on two drugs subject to the agreement. Celgene timely removed the case to federal court. The case was assigned to this court and referred to Magistrate Judge Judy Dein for pretrial purposes.

CMCC moved for summary judgment. After holding a hearing on the motion, Magistrate Judge Dein issued a report recommending that CMCC's motion for summary judgment be allowed with respect to royalty payments for one drug, Revlimid®, and denied with respect to another, Pomalyst®. She also recommended that CMCC's

motion for summary judgment be allowed as to Celgene's defense of patent misuse with respect to Revlimid® and denied with respect to all other products.

For the reasons explained below, the Magistrate Judge's Report and Recommendation is being adopted in part and modified in part. On de novo review, the court finds that the Agreement is unambiguous as to Celgene's obligation to pay royalties on sales of Revlimid® and ambiguous as to its obligation to pay royalties on sales on Pomalyst®. However, the court finds that there are material disputes of fact that preclude summary judgment on the issue of patent misuse. CMCC's motion for summary judgment is, therefore, being allowed with respect to the construction of the Revimid royalty provision and denied in all other respects.

I.   BACKGROUND

The court adopts the facts as recited in the Magistrate Judge's Report and Recommendation. See R&R at 2-7. The essential facts may be summarized as follows.

CMCC is the owner of several patents for chemical compounds known as Thalidomide Analogs (collectively, the "Analog Patents"). On December 31, 2002, CMCC granted Celgene an exclusive, worldwide license to the Analog Patents. See Agreement §2.1. In return Celgene agreed, among other things, to pay CMCC royalties on sales of products containing Thalidomide

Analogs. See id. §4.3. Those products were divided into three categories: Amino Thalidomide Products, Revimid Products, and other Licensed Products. See id. Each category of product was covered by a separate royalty provision. Each such provision specified an end date of "later of the termination of this Agreement or March 1, 2013." See id. Additionally, the Amino Thalidomide and Revimid royalties end dates were to be extended by "the number of days equivalent to any patent term extension granted to Celgene for [a relevant product] under 35 U.S.C. §156 with respect to March 1, 2013 only." See id. §§4.3.1 & 4.3.2. On January 25, 2007, CMCC assigned its interest in the royalty payments to defendant CR Rev Holdings LLC.

On March 27, 2008, Celgene obtained a patent term extension ("PTE") for one its own patents on Revlimid®, a Revimid Product (the "Revlimid PTE"). On March 1, 2013, Celgene ceased paying royalties on its Amino Thalidomide and Revimid Products. CMCC sought further payments, asserting that the Revlimid PTE extended the period for which is could collect royalties. Celgene declined to pay additional royalties. The following month, CMCC filed this instant case, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. After removing the case to federal court, Celgene answered the complaint. Among other things, it asserted a

defense of patent misuse. CMCC has moved for summary judgment on its breach of contract claim.

## II.  LEGAL STANDARDS

### A. Review of a Magistrate's Disposition

Rule 72(b)(3) of the Federal Rules of Civil Procedure requires the court to review "de novo any part of the magistrate judge's disposition that has been properly objected to." "Conclusory objections that do not direct the reviewing court to the issues in controversy" are not proper under Rule 72(b). Velez-Padro v. Thermo King De Puerto Rico, Inc., 465 F.3d 31, 32 (1st Cir. 2006). Moreover, "[a party is] not entitled to a de novo review of an argument never raised" before the magistrate judge. Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987). "Parties must take before the magistrate, 'not only their best shot but all of their shots.'" Id. (quoting Singh v. Superintending Sch. Comm. of City of Portland, 593 F. Supp. 1315, 1318 (D. Me. 1984).

Waiver of de novo review by failing to file proper objections does not entitle a party to "some lesser standard" of review. Thomas v. Arn, 474 U.S. 140, 149-50 (1985); see also Costa v. Hall, No. 00-12213-MLW, 2010 WL 5018159, at *17 (D. Mass. Dec.2, 2010) ("Absent objections, the court may adopt the report and recommendation of the magistrate judge."). However, review by the court in such circumstances is not prohibited, and

4

some level of oversight, even if not de novo, is encouraged. See Henderson v. Carlson, 812 F.2d 874, 878 (3rd Cir. 1987).

B. Summary Judgment

Federal Rule of Civil Procedure 56 allows a party to move for judgment on all or part of a claim or defense at issue in a case. Rule 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if, in light of the relevant substantive law, "it has the potential of determining the outcome of the litigation." Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). A factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009) (quoting Anderson, 477 U.S. at 248). In making this determination, the court must "constru[e] the record in the light most favorable to the non-moving party." Douglas v. York Cnty., 433 F.3d 143, 149 (1st Cir. 2005). The record should not, however, be scrutinized piecemeal; rather, it must be "taken as a whole." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Kelly v. Cort Furniture, 717 F. Supp. 2d 120, 122 (D. Mass. 2010).

In a contract dispute, "[s]ummary judgment is appropriate when [the] plain terms [of the contract] unambiguously favor either side." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 784 (1st Cir. 2011). If the contract is ambiguous, "the court must [] ask whether the extrinsic evidence reveals a genuine issue of material fact regarding the meaning of the ambiguous language." Mason v. Telefunken Semiconductors Am., LLC, 797 F.3d 33, 38 (1st Cir. 2015). "If the extrinsic evidence is 'so one-sided that no reasonable person could decide the contrary,' the meaning of the language becomes evident" and summary judgment is appropriate. Id. (quoting Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev., 768 F.2d 5, 8 (1st Cir. 1985)). However, if the extrinsic evidence is "contested or contradictory," there is a material dispute of fact and "summary judgment will not lie." Id. (internal quotations omitted).

III. DISCUSSION

In her Report and Recommendation, Magistrate Judge Dein found that "the clear and unambiguous language of §4.3.2 [of the Agreement] provides that Celgene must continue to make royalty payments on Revlimid® for an additional 1,167 days from March 1, 2013." R&R at 16. However, she found the Agreement to be ambiguous as to Celgene's obligation to pay royalties past March 1, 2013, on any other products. See id. at 25-26. She then found that "patent misuse is not a defense to Celgene's obligations to

pay royalties on Revlimid® through May 11, 2016," but declined to make any such finding regarding other products. Id. at 27.

In light of Celgene's objections, the court has reviewed these conclusion de novo. For the reasons stated below, it is adopting in part and modifying in part the Magistrate Judge's Report and Recommendation.

A. The Revimid Royalty Provision

Section 4.3.2 of the Agreement requires Celgene to pay CMCC royalties on sales of Revimid Products. The parties disagree about when this obligation ended. The disputed provision provides:

> In further consideration for the rights and license granted herein with respect to Revimid, Celgene shall pay to CMCC, until the later of the termination of this Agreement or March 1, 2013 plus the number of days equivalent to any patent term extension granted to Celgene for a Revimid Product under 35 U.S.C. §156 with respect to March 1, 2013 only, a royalty equal to one percent (1.0%) of the Net Sales Revenue received by Celgene for sales of a Revimid Product.

Agreement §4.3.2 (the "Revimid Royalty Provision"). CCMC argues that the Revlimid PTE, as a "patent term extension granted to Celgene for a Revimid Product," extended the March 1, 2013, expiration date to May 11, 2016. Celgene argues that only PTEs for CMCC's Analog Patents, and not PTEs for its own patents, would cause such an extension to take effect. The question before the court is whether the Revimid Royalty Provision is ambiguous in that respect. See Farmers Ins. Exch., 632 F.3d at

7

784. The Magistrate Judge concluded that it is not. See R&R at 13. The court agrees.

Under Massachusetts law, a contract is ambiguous if "'an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.'" Farmers Ins. Exch., 632 F.3d at 783 (quoting Bank v. Int'l Bus. Machines Corp., 145 F.3d 420, 424 (1st Cir. 1998)). "[T]he question whether a provision can reasonably support a proffered interpretation is a legal one, to be decided by the court." Fleet Nat. Bank v. Anchor Media Television, Inc., 45 F.3d 546, 556 (1st Cir. 1995). In making this determination, the "[c]ontract[] must . . . be read as a whole." McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287, 298 (1st Cir. 2004). If the contract is unambiguous, the court must interpret it according to its plain terms. See Bank, 145 F.3d at 424. If the contract is ambiguous, the court may consider extrinsic evidence, including the parties' negotiations, course of performance, and prior dealings. See Den Norske Bank AS v. First Nat. Bank of Boston, 75 F.3d 49, 52-53 (1st Cir. 1996). However, extrinsic evidence may not be introduced "to create an ambiguity when the plain language is unambiguous." Gen. Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007).

The Revimid royalty provision provides for an extension equal to "the number of days equivalent to any patent term extension granted to Celgene for a Revimid Product." Agreement §4.3.2. A "Revimid Product" is any product that contains Revimid[1] as an active ingredient. Id. §§1.10-11. Nothing in the Revimid Royalty Provision or the definition of a Revimid Product limits the phrase "any patent term extension . . . for a Revimid Product" to CMCC's patents. Accordingly, the plain language of the Revimid Royalty Provision provides that it is to be extended whenever Celgene obtains a PTE on a product containing Revimid, without reference to whether the PTE is for one of CMCC's Analog Patents. The parties agree that Revlimid® is a Revimid Product.

Celgene argues that two features of the Revimid Royalty Provision render it ambiguous. It argues that the phrase "with respect to March 1, 2013 only" could reasonably be read to limit the phrase "any patent term extension." See Obj. to R&R at 3-8. Consequently, "Celgene's interpretation of the royalty provision is that the royalty obligation extends beyond March 1, 2013 only if Celgene obtained a PTE on a patent that otherwise expired on March 1, 2013, e.g., an Analog Patent." Id. at 4. It goes on to argue that the Magistrate Judge erred by failing to consider this interpretation. Id. at 4-6.

---

[1] Revimid is a compound with a certain chemical structure defined in §1.10 of the Agreement.

As an initial matter, the record supports the conclusion that the Magistrate Judge fully considered Celgene's interpretation of the Revimid Royalty Provision before rejecting it. See Oct. 21, 2015 Hr. Tr. at 32:3-38:2, 59:22-61:17. In any event, the court's de novo review leads to the same conclusion. In essence, Celgene interprets the phrase "with respect to March 1, 2013 only" to mean "with respect to Analog Patents only." Viewing the Agreement as a whole, McAdams, 391 F.3d at 298, that interpretation is unreasonable. The term "Analog Patents" is defined in §1.5 of the Agreement. That definition does not refer to patent expiration dates. The parties use the term "Analog Patents" throughout the Agreement to refer to CMCC's patents. Celgene's interpretation would, therefore, require the court to infer that the parties chose to use the phrase "with respect to March 1, 2013 only" to mean "Analog Patents" in the Revimid Royalty Provision, but not elsewhere in the Agreement. This inference is not reasonable. Because Celgene has not "provide[d] a plausible alternative meaning" for the Revimid Royalty Provision, it has failed to show that the Provision is ambiguous. Coffin v. Bowater Inc., 501 F.3d 80, 98 (1st Cir. 2007).

Celgene also argues that because the Revimid Royalty Provision was entered into "[i]n further consideration for the rights and license granted herein with respect to Revimid," it

10

can only be extended for PTEs to licensed patents, i.e., Analog Patents. See Obj. to R&R at 10-13. The court assumes, without finding, that the consideration given for each royalty agreement is at least ambiguous. However, Celgene offers no support for the principle that a parties obligations under a contract are limited by the consideration it received. As the Magistrate Judge correctly observed, Celgene's argument "seeks to connect unrelated principles." R&R at 14. Accordingly, the Revimid Royalty Provision is not ambiguous on this ground either.

Finally, Celgene objects the Magistrate Judge's consideration of extrinsic evidence in her Report and Recommendation. See Obj. to R&R at 8-10. The Magistrate Judge found that the Revimid Royalty Provision is unambiguous on its face and, therefore, she should not have considered any extrinsic evidence. See Mason, 797 F.3d at 38; Gen. Convention of New Jerusalem, 449 Mass. at 835-36. On de novo review, the court has reached the same conclusions as the Magistrate Judge without consideration of extrinsic evidence. Accordingly, the court is adopting §III.B of the Magistrate Judge's Report as modified in this Memorandum. The court is also adopting the Magistrate Judge's recommendation that summary judgment be entered in CMCC's favor declaring that "the clear and unambiguous language of § 4.3.2 provides that Celgene must

continue to make royalty payments on Revlimid® for an additional 1,167 days from March 1, 2013." R&R at 16.

B. <u>The Amino Thalidomide Royalty Provision</u>

Section 4.3.1 of Agreement requires Celgene to pay CMCC royalties on sales of Amino Thalidomide Products. The structure of this provision is essentially the same as the Revimid Royalty Provision. <u>See</u> Agreement §4.3.1 (the "Amino Thalidomide Royalty Provision"). The Magistrate Judge concluded that the Agreement was ambiguous as to whether the Revlimid PTE extended the term of the Amino Thalidomide Royalty Provision. <u>See</u> R&R at 25-26. Neither party has objected to this finding. Moreover, the court finds the Magistrate Judge's analysis to be thorough, thoughtful, and persuasive. Accordingly, the court is adopting without modification §III.C of the Report and Recommendation and denying summary judgment as to the interpretation of §4.3.1.

C. <u>Patent Misuse</u>

Celgene asserts that any obligation it had to make royalty payments on Revimid or Amino Thalidomide Product sales after March 1, 2013, would constitute patent misuse. <u>See</u> Answer ¶¶ 32-39. Any such royalties, it argues, are "unlawful <u>per se</u> and unenforceable as a matter of federal patent law." <u>Id.</u> ¶39. The Magistrate Judge concluded that "patent misuse is not a defense to Celgene's obligations to pay royalties on Revlimid® through May 11, 2016." R&R at 27. As to the other royalty provisions,

she recommended that "given the uncertainty of the termination date of Celgene's other royalty payment obligations, this court recommends that a ruling on the applicability of the doctrine of patent misuse otherwise be deferred." <u>Id.</u> at 26. For the reasons explained earlier, the court agrees with the Magistrate Judge that the termination date of the Revimid Royalty Provision is unambiguous. However, because of other ambiguities in the overall structure of the Agreement, summary judgment on the issue of patent misuse is not justified.

The doctrine of patent misuse exists "to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." <u>Mallinckrodt, Inc. v.</u> <u>Medipart, Inc.</u>, 976 F.2d 700, 704 (Fed. Cir. 1992). Under this doctrine, "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." <u>Brulotte v. Thys Co.</u>, 379 U.S. 29, 32 (1964). However, as the Supreme Court recently explained:

> [P]arties have [] more options when a licensing agreement covers either multiple patents or additional non-patent rights. Under <u>Brulotte</u>, royalties may run until the latest-running patent covered in the parties' agreement expires. <u>See</u> 379 U.S., at 30, 85 S. Ct. 176. Too, post-expiration royalties are allowable so long as tied to a non-patent right—even when closely related to a patent. <u>See, e.g.</u>, 3 Milgrim on Licensing § 18.07, at 18–16 to 18–17.

<u>Kimble v. Marvel Entm't, LLC</u>, 135 S. Ct. 2401, 2408 (2015).

Celgene argues that, under Brulotte, Revlimid® constitutes a "defined product." Obj. to R&R at 14. Therefore, it argues, once the patents covering Revlimid® expired, continued enforcement of the Revimid Royalty Provision would constitute patent misuse. See id. In Brulotte, 379 U.S. at 29-30, the petitioners had licensed the use of patented hop-picking machines. Although the licenses listed 12 patents, only 7 were used in the machines. The Court held that royalties could not be assessed "after expiration of the [seven] patents incorporated in the machines," even though the five unused patents had not expired. In doing so, it distinguished Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 833, in which the Court held that royalties could be assessed on "a privilege to use [a] patent" even if the patents was not used. See Brulotte, 379 U.S. at 33. It relied on the factual differences between the two cases: the petitioners in Brulotte were "licensees . . . using [patented inventions]," while the petitioners in Automatic Radio were "manufacturers buying the right to incorporate patents into their manufactured products." Brulotte, 379 U.S. at 33 n.5.

The relationship between the three royalty provisions and the rest of the Agreement is ambiguous, at least for the purpose of the patent misuse analysis. On one hand, the Agreement purports to be a single license for all 77 Analog Patents. See, e.g., Agreement at Recitals (granting Celgene "an exclusive,

14

worldwide license under the Analog Patents"), §2.1 (licensing "CMCC's entire right, title and interest in and to the Analog Patents"). On the other hand, "nothing in the Agreement expressly links obligations for royalty payments for one Product to royalty payments for another." R&R at 17. If, as CMCC contends, the parties intended to define a single license for all Analog Patents, Automatic Radio may permit royalties to be assessed after March 1, 2013. If, as Celgene argues, the parties intended to subdivide the Analog Patents into three categories based on the relevant patents, Brulotte may prohibit such an extension. Furthermore, the Agreement is ambiguous as to whether Celgene agreed to pay royalties solely in consideration of the exclusive licenses, or also in consideration of other, non-patent rights. See Kimble, 135 S. Ct. at 2408 ("[P]ost-expiration royalties are allowable so long as tied to a non-patent right.").

Resolution of these ambiguities will require consideration of extrinsic evidence, including the parties' negotiations and prior dealings. See Den Norske Bank, 75 F.3d at 52-53. However, there are material disputes of facts regarding that extrinsic evidence. See, e.g., CMCC Stmt. of Facts (Docket No. 84) ¶8 (describing scope of rights in Agreement); Celgene Stmt. of Facts (Docket No. 94, sealed) ¶8 (disputing CMCC's description). A reasonable fact finder could resolve these disputes in either

party's favor. Accordingly, summary judgment is not justified on Celgene's defense of patent misuse. See Mason, 797 F.3d at 38. The court is, therefore, modifying §III.D of the Report and Recommendation as explained this Memorandum. Summary judgment is being denied with respect to patent misuse as to all products.

IV.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   The attached Report and Recommendations (Docket No. 116) is ADOPTED in part and MODIFIED in part, as described in this Memorandum and Order, pursuant to 28 U.S.C. §636(b)(1).

2.   For the reasons stated in the Report and Recommendation and in this Memorandum and Order, CMCC's Motion for Summary Judgment (Docket No. 82) is ALLOWED with respect to the construction of §4.3.2 of the Agreement and DENIED in all other respects.

3.   This case is REFERRED to the Magistrate Judge for further proceedings, if any, until the case is ready for a pre-trial conference or, if the parties consent, for all purposes.


/s/ Mark L. Wolf
_____
UNITED STATES DISTRICT JUDGE